And our last case for argument is Elliot McGuckin versus Pub Ocean Limited. Counsel. Good morning, Your Honors. May it please the Court, my name is Scott Burroughs. I'm here on behalf of the plaintiff and appellant, Dr. Elliot McGuckin. We're here today because Pub Ocean, at the summary judgment stage, did not discharge its obligation of proving that its use of our client's material was a fair use. The infringing derivative work at issue incorporated 12 of our client's photographs in full resolution, in their entirety, without any new expression. And the infringing article was published for profit. This is admitted between the parties. The district court, though, in finding otherwise, sui sponte, made three errors. He erred, the court erred factually, the court erred procedurally, and the court erred on the substance. Factually, and I know usually we're not here to do fact-finding, but the court can make a finding of fact if there's clear error. The district court indicated that only 12 of our client's photographs were copied, when in fact, and this is undisputed, it's 12 photographs, not 10 photographs, as was indicated in the opinion. So that fact alone would seem to justify revisiting this question of whether or not it's fair use. On procedure, the court also erred because the decision was made sui sponte without giving our client the ability to address this fair use defense. And that was made more egregious by the fact that of the few bases that the court relied on for its fair use finding, one of those was based on its own internet research, where it went to Google or a search engine and found out that a lot of people go to Death Valley each year. And the court relied on that finding to find fair use. Now, that was never raised in oral argument, because there was no oral argument. And the first that my client saw of that particular fact was in the court's ruling. Now, on the substance, your honors indicated that you'd like us to address this question of whether or not PubOcean's derivative article was news reporting about Dr. McGuckin's photograph. And I emphasize about, not in an attempt to be an effective orator, but because the cases emphasize about. The cases emphasize that for a use of this nature to be fair use, the use really has to be about the photograph. The thrust of the article would be about the photograph. For example, recently you've seen articles about the fact that there now exists a black hole photograph that never existed before. That's an article about the photograph. Here, that's simply not the case. There was no news. There was no reporting. To the extent there was reporting, it wasn't about Dr. McGuckin's photography. On the news portion of it, it's undisputed that the article that PubOcean published, this derivative work, was not published contemporaneous with the news of the existence of these photographs. Unlike in Nunez, for example, where the article was about the fact that these photographs existed and the fact that these photographs impacted Ms. Puerto Rico's ability to be Ms. Puerto Rico, this article really had nothing to do with Dr. McGuckin's photographs. And it was published well after these photographs had been published by Dr. McGuckin and also his licensees. So it was at least 30 days, close to 40 days. And in the modern news cycle, 40 days is a lifetime. So to the extent that the defendant is claiming news reporting here, they can't get around the fact that they didn't publish this news article until 40 days after the so-called news event was reported by other folks in the press. And on this question of reporting, there was no reporting. It's undisputed that the material that's in the PubOcean derivative work, not only the photographs, but the text as well, was copied from third-party sources. There's no evidence that PubOcean sent a reporter to Death Valley or even interviewed my client or did anything in relation to reporting on the photograph. What PubOcean did was copy my client's photographs in their entirety and republish them with no alteration, no new meaning, imbuing them with no new purpose. And then also, it went to my client's licensees and copied the text from those articles. Your honors can compare the Daily Mail article that's in the evidentiary record at 184 to 190 with the defendant's article that's in the evidentiary record at 113 to 156. And you'll see that most of what's in the PubOcean article is simply rephrased or regurgitated material from the Daily Mail article. And to the extent it isn't, there is a direct quote, for example, about Mr. Magookan's photography, but that direct quote is copied entirely from the SFGate article. So it can't be the case that a defendant can copy someone's work in its entirety and then say, well, not only did I copy the photography, but I also copied some quotes about the photography, and that makes my use fair. It's simply not the law. In most cases like this, for example, there's currently an Andy Warhol case in front of the Supreme Court, the secondary user, the creator of the derivative, spills a lot of ink talking about what it did to transform the work, what it did to change the work, what it did to alter it with new meaning. Here, there's no evidence in the record whatsoever that PubOcean did anything to add material to the photography that's at issue. There's simply no reporting that was done here. Counsel, with regard to the reporting issue, I know you're arguing it on the substance, but what's your position on waiver? Because this argument really wasn't raised in the briefing. Yes, Your Honor. I was going to address that next in discussing why they don't argue reporting, like you usually see when you have a derivative user attempting to use someone else's work without their consent. They don't argue it because they can't. In their answer, for example, going all the way to the beginning of the case, they did present the affirmative defense of fair use, but in that affirmative defense, they don't identify news reporting as one of the bases. They identify the others, commentary, criticism, and so forth, but there's no news reporting even in their answer. And then at the district court level, and again on appeal, they admit that Dr. McGuckin's photographs were used only as illustrative aids, only to show what was described in the article. And you can see by just looking at the titles of the article or the title of the article that the article is not about Dr. McGuckin's photography. The title is Massive Lake Just Materialized in Middle of One of the Driest Areas on Earth. That's not an article about Dr. McGuckin. If anything, the Daily Mail article that I mentioned earlier that's in the record is more about Dr. McGuckin's photographs because it's entitled Photographer Driving Through Death Valley, America's Hottest Desert Captures a Lake Formed After a Rainfall. And in that case, and we'll get to this on the market effect factor, but Daily Mail contacted my client, the artist, and obtained a license. And that article is much more about Dr. McGuckin and much more about his photography than the PubOcean article, which simply copied the photographs and then copied this third-party content. But to address your question, Judge Winn, the waiver is most apparent in their opposition brief because they admit on the first page and throughout that the photographs were only used, quote, to illustrate the article. And as this court found in Monge, if you're just using the photographs and sprinkling them with commentary that's not imbuing the photographs with new purpose, as is certainly the case here, then it's not fair use. Specifically, the language they use in their opposition is the photographs were used, quote, to illustrate the effects in Death Valley, the effects of this rainfall. There's simply nothing here that would indicate to anyone that the work is transformative, even as news reporting. And remember, just because something is news reporting doesn't necessarily mean it's fair use. Otherwise, photojournalists would be out of a job. If you could simply say, well, this is newsworthy and we're publishing it and commenting on it so we can use it as fair use and not pay a license fee, why would anyone make journalism? Why would anyone go to war-torn climes or go at great expense to places that are out of the way like Death Valley and create photography if people can say, well, because your photography is so good, it's newsworthy so we can use it for free? That's simply not how fair use works. As Judge Wynn and the panel recently found in Dr. Seuss, you have to alter the original. You have to add new purpose. You have to do something that furthers the purpose of the Copyright Act, which was promulgated to encourage people to create new artwork. So we're really looking at almost, and I know fair use is quite nebulous and every case is a little bit different in terms of how the factors are applied, but we're really looking at balancing the incentives under the Copyright Act. Do we want to encourage folks like Dr. Magookan to travel at his own expense into Death Valley to create beautiful photography like this? Or is it more important that we allow companies like PubOcean, who, as you can see from the evidentiary record, simply cobbled together things that they found online and then sold advertising against them? Is their ability to present these photos to the public, and again, remember they've already been presented to the public through my client's site and through his licensees, but is that more important than the incentive to the artist to create? The answer has to be no. There's no way that we want to, as the Dr. Seuss panel said, incentivize the type of piracy that we see here on behalf of PubOcean. The incentive is illustrated in this very case. Why would Daily Mail contact my client, pay my client a license fee, if a company like PubOcean can go and use that same work for free? It would simply destroy the market, and we'll get to, I hope, the marketplace effect in effect. But I want to talk a little bit about this issue of good faith. As Judge Ikuda wrote in the Perfect Ten case, if you come to this issue of fair use, if you're trying to trigger this defense, which is a very heavy one, because you are stripping an artist of their rights here, you are stripping them of their ability to control where their work is published, they need to come in good faith. And as we know from Dr. Seuss, the defendant bears the burden on every element of a fair use defense. Here, there's no evidence that PubOcean used this work in good faith. The evidence is that they knew Dr. McGuckin created these photographs, they knew he had licensed them to third parties, because they copied a quote, for example, from SF Gate, one of his licensees, yet they didn't reach out to him, they didn't contact them, they didn't take any steps, not one step whatsoever, to find out whether he consented to the use or whether he would be agreeable to a license. Now, the evidence that should be in the record here, if PubOcean really wanted to make a showing that it acted in good faith in using these works, is that it made some of those attempts. And we know from the Unicolors versus Urban Outfitters case, that willfulness or recklessness can be found in the copyright context, when as a matter of policy, you don't reach out to identify who owns a copyright or whether or not it can be used. The policy here is one that makes sense, because as the record shows, PubOcean made about $6,000 from this particular article, which doesn't seem to be a lot, but when you multiply that times thousands of similar articles across dozens of sites, you get to a large number. PubOcean makes around $25 million a year in advertising. And it couldn't do that if it didn't ignore photographers' rights, if it didn't see someone like Dr. McGuckin, who had created this artwork at his own expense, and say, I'm not going to pay that person, I'm not going to reach out to them and obtain a license. If it did, it simply wouldn't make money. And that takes me real quickly to this market effect. And the court here found that the market effect did not favor the artist, because the artist was able to license his work a couple of times. But that exact argument was rejected in the Brammer case that we cite in the Third Circuit, that said that that can't be the standard, because then any successful work could be used as a fair use, because it's then monetized or sold afterward. Dr. Seuss is another great example. Dr. Seuss was sure able to keep selling his books and product, despite the infringement in that case. And the court did not say, well, he's still able to monetize it, so it's fair use. The issue is not whether or not the artist could still license, the issue is, is the market impacted? Not just that market, but the potential market if the use became widespread. Here, it seems self-evident that if publications like PubOcean don't have to pay artists and photographers for licenses, they're not going to pay those licenses. And we have one example here. PubOcean could have come to our client here and obtained a license. So there's one license right there that he should have received that he didn't. So the market's affected by virtue of the very infringement that's at issue. But the district court here didn't even look at the potential market. It looked only at this fact that he had entered into some licenses to find no negative market impact. And again, the burden, Dr. Suh speaks to this, is entirely on the defense to prove that. They didn't do so here, and as such, did not discharge their burden. And I'll maintain my remaining two minutes. Thank you. All right. We'll hear from the other side there. Oh, you're muted, sir. Good morning, your honors, and may it please the court. My name is Shane Tsen, and I am counsel for Appellee PubOcean Limited. And I want to briefly address a couple of issues that appellate lawyers raised. The issue of whether the court's error in the number of his photos that was used in the article 12 versus 10, I believe, is not a material error. Actually, the court, in reaching his decision, was mainly addressing the issue of the number of photos that were created by Mr. McGuckin versus all of the other photos that were listed in the article in terms of creating a new and transformative work. In terms of the procedural issue that Mr. McGuckin's lawyer raised, it is undisputed in this circuit and others that the court has sua sponte discretion to grant summary judgment if he believes that the material facts are undisputed based on the law and that summary judgment is appropriate, even if a cross-motion for summary judgment is not granted, so long as the other side had plenty of opportunity to respond. And they did. PubOcean raised the fair use defense as the exclusive defense in its opposition, and they had plenty of opportunity in their reply to raise all the issues that they raised, including the ones that they raised on appeal. In terms of the adjudicial notice, it is well within our federal rules of evidence that the court may, within its discretion, take judicial notice of essential facts, like the fact it is really undisputed that Death Valley is a tourist attraction and that it may be interest to the public. It's not an issue that is very much in dispute. In terms of the substantive issues, let me address those issues by addressing the court's questions. That you had previously addressed to the court. PubOcean's article is about the fact that a thermal lake appeared in Death Valley in March of 2019. But that includes, in the wider context of the phenomenon, including its place in other deserts or environments around the world, including in the U.S. But that reporting also includes opponents' photographs, which admittedly, and also a discussion of what he has said publicly, including in Daily Mail and SFGate, about how he took those photos. It is, we discussed this in the court below and on appeal, that the article in and of itself, in terms of how it reported the phenomenon and the context of it, which includes, and there's no dispute that when we just addressed this in our brief, that we did take, including the article, Mr. McGuffin's publicly available information regarding how he took the photographs. But again, that is part of the article, not the entirety of it, which is what the court focused on and which Mr. McGuffin doesn't. So Mr. McGuffin would like you to focus in on the narrow part of the article that talks about his photographs and his issues, but ignores the vast majority of the article, which talks about a whole gamut of issues that he does not address at all. So counsel, if I wanted to have a coffee table book and I took photographs from 100 different photographers and put them in a coffee table book and said, this is a book about the photographers of Death Valley, and they are just incredible, and I have a little blurb on each one, a little bio, here's where he went to school, here's the photos he's taken around the world, could I just sell that coffee table book with photos from 100 photographers because as to this one photographer, it's just his, but now I've done this to 100 people, so therefore it's really not a violation as to anyone. Can I do that? Your Honor, that may be a tougher call. And the issue is, based on Ninth Circuit law, is whether or not that compilation or that montage creates a brand new piece of work that's separate and apart from the individual works that you have copied. And I think the hypothetical is, again, a difficult call, I would admit. How is it different from what we've described in this case? I mean, this case was a compilation of photos with some little descriptions of each person. How is it any different than the coffee book, coffee table book? Your Honor, there's only one assertion of a copyright infringement, whereas I believe in your hypothetical, as I read it, there would be 100 assertions of copyright infringement. But that shouldn't matter as to a plaintiff. I mean, the plaintiff can't control if other plaintiffs are suing. The test can't be how many plaintiffs are suing to whether it becomes fair use or not. It's as to his pictures. Yes, Your Honor, I understand that. The issue then is whether or not the compilation or the montage is a brand new, is a new expression, right? And what I believe is the most analogous case here is the CBS case in which the Reginald Denny video, which is part of the trio of Los Angeles news service cases, in which that video was used as a promo for a court TV reporting regarding the defendants in the Reginald Beating trial. In that situation, the offending work, it's not disputed that the offending work is part of it, and they created additional, they added it to additional photographs that may or may not also have copyright infringement issues, but created a brand new piece of work. That doesn't, and the situation also is not that the promo material is not necessarily news. It's actually promoting a news program. So in that situation, the court determined that the compilation or the promo that was created was a new expression that was protected, and it was transformative work. We also focused on the fact that the clip played only for a few seconds as opposed to, I guess, nine minutes for the clip that we found was not a fair use. How does that relate to this case where you have the whole photo basically unchanged? Well, Your Honor, again, the fact of the matter is, and again, it's an issue, is whether or not, just because we copy the entire photo doesn't necessarily mean that it's not fair so long as it is appropriate for the piece of work, the new work that we've created, whether or not the overall work. What's the new work? I'm not sure I understand your argument at all. What new expression or meaning do you give to the original work when you're utilizing it for the exact purpose for which the work was created, which is to show this phenomenon? Well, Your Honor, the new work is to place what Mr. McCutcheon recorded in his photographs in the context of other phenomenon that has occurred both in Death Valley and in desert environs around the world, and that is nothing that is expressed in Mr. McCutcheon's photographs. There's no discussion, well, for example, there is no expression or discussion of the prior desert blooms that occurred in years past, which we discussed as well, which it is not discussed, again, in the Daily Mail or SFGate articles, which they claim we copied. There's no discussion of other ephemeral phenomenon that occurs either in the Sahara Desert or in other deserts. So we have created a – look, I understand there is a part of this work, and we don't agree with it. It's on a – disagree with it. It's on the face of the article as to how we used Mr. McCutcheon's work and what he said publicly. But that is a narrow part of the overall article that we created and posted online. So you're saying then – I mean, I'm just trying to understand the limits of what you're saying. It seems to me that unless it is simply copying a photo, just a simple copy photo with no other expression to it, anything would be fair use, as long as you add a little bit to it, correct? No, Your Honor, I think the Ninth Circuit opinions are very clear as to what the guidelines are. We cannot wholesale copy the photo and then put a little voiceover or description of what appears in it in it. That's not enough. We cannot – and that is in both, I believe, KCAL and Menage. We cannot put a little – again, as Your Honor says, put a little note on it and say this little description of what already appears in the photo is enough for fair use. That's not what we've done here. I think that's very clear based on the four corners of the article. That is well above what – how we created this article in terms of the additional photographs that we added, the additional descriptions of other events that occurred as well, and to put – and essentially put that – Mr. McGuckin's photos and his description in the context of other – we inform our readers not only of Mr. McGuckin's photographs and how he took those photos, but put those in context of other phenomena. Other than the CBS case where there was a brief clip of a few seconds, what is the best supporting that you could take a whole photo or multiple photos in this case and reprint them as long as they're part of a larger article? Your Honor, I would believe the other case is the First Circuit case in Nunez versus Caribbean – Caribbean International News. The – is that – that's the – That's the – that's the Miss Puerto Rico Universe case in which the photographs – So the photographs are the story. So that was one of those – the new story is the photograph, like the black hole story that opposing counsel – but here the story is about a lake in the desert. It isn't about – the story is not Mr. – Dr. McGuckin took amazing photo as in the black hole case. Yeah, Your Honor, and again, I understand the point. But the fact of the matter is even if – even if in that case they put the photos in context of a – of a – a – a existing news story, which was Miss Universe's fitness to serve in her role. In this context, we put the photographs and Mr. – Mr. McGuckin's – But the reason for her not fitness was the photographs, right? So the photographs was the point of the story, I guess. Yes, Your Honor. Here the photographs is not the point of the story. They just illustrate the story. I understand that, Your Honor. But also, you know, in – there are other cases in the non-news context, as again, as this court recognizes, even in commercial contexts and other – and their situations, so long as the case is – if the use is transformative and wholesale copying of the photos may allow for fair use. And those cases include the Perfect 10 case, the Kelly Arabia case, in which they were not news stories, but those photographs were used for thumbnails in search engines. I know that there are certain distinguishing factors, especially in the Kelly case, because the photos were of lower quality. But I do not believe that that is the case for the Perfect 10. I don't recall that that was the situation in the Perfect 10 case as well. And, Your Honor, I do not believe the issue of – for my last little bit, I understand I'm running out of time here. I do not believe that the news story issue has been waived. Again, whether or not our news – our article was news and included Mr. McGuckin's – the fact that they were photographed was a discussion that was discussed and briefed heavily both in the lower court and on appeal, discussing first appellant's argument that the court erred in determining that it was a news story, and then our response that the court was indeed correct in determining that it was a news story.  HENNEBERGER Okay. I think we have your argument. Thank you.  GARGANO Thank you, Your Honor.  HENNEBERGER And you have a few minutes for rebuttal. MR. GARGANO Thank you, Your Honors. To start with the CBS case, as indicated, that case was not only a highly transformative abuse in terms of the amount and how it was used. If I'm reading the opinion correctly, it was one of those situations, almost like the 60 minutes clock. We had a couple of seconds of the footage playing behind the clock, along with a bunch of other footage, to promote this television show. So it was a totally different purpose than here, where the purpose is the same, to illustrate Death Valley. So CBS, we believe, is an apposite. We believe the other L.A. news cases, KCAL and Reuters, are far more on point. In KCAL, for example, the court says, just adding a basic voiceover to the footage does not make it fair use. Here, PubOcean's, quote, unquote, contribution in creating their derivative is less than a voiceover, because at least the voiceover in KCAL was original content provided by the KCAL reporter. And going to Nunez, I think it's important to note that Nunez, it wasn't found to be fair use just because the article was about the photograph. It was found to be fair use because the very existence of the photograph was the story. And I think that's what the preamble to Section 107 means when it talks about news reporting. Because you have to read that in connection with the third factor, or the second and third factor, which speaks to, if someone claiming fair use has to prove that they only used as much as was necessary to tell the story. So here, of course, even if the derivative was about the Magucan photographs, they would have to show they couldn't have told that story by just using one, or a portion of one, as opposed to 12. So when you look at Nunez, and even with the black hole example, it's really the existence of the photographs that's the story. And in those situations, news reporting can be fair use. Even an article like the Daily Mail article, which has interviews with my client and speaks about my client and his creation, I don't believe that that's fair use. And Daily Mail didn't either, because they got a license. Because there, the existence of the photographs isn't the story. It describes them, and it adds a little bit of commentary and context. But that isn't enough to make a use a fair use. In those situations, a license is still necessary. The Pabotian use here, this derivative they've made, is really akin to what the Seuss panel argued, or instructed us to find as not fair use. Anytime you see something that's just repackaged, maybe they've added some material, as in Judge Owen's example, that's not fair use. If it was, you'd have these perverse incentives, where news media would go and say, well, let's not pay license fees. Let's just hire someone to write really basic captions and really descriptive, non-creative material below the photographs. And then we can claim fair use by saying, well, look, look what we've added. We've added commentary. We've added material that's outside of the four corners of the photographs. You're over time now. Please wrap up. OK. So in closing, I did just want to say that we do, as Seuss says, as Monge says, all the cases in the Ninth Circuit, the one thing that they're clear on is that a use is not fair unless it does transform the work with new purpose and new expression. Here, there's absolutely none of that. There's been no showing of anything of that nature. And the district court should be reversed on that basis with an instruction to enter summary judgment in favor of the artist. Thank you, Your Honors. We thank both sides for their argument. The case of Elliott McGugan v. Pub Ocean is submitted and we're adjourned for this session and for the week. All rise. This court for this session stands adjourned.
judges: IKUTA, NGUYEN, OWENS